Slip Op. 10-86

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                :
CLEARON CORPORATION and         :
OCCIDENTAL CHEMICAL             :
CORPORATION,                    :
                                :
          Plaintiffs,           : Before: Richard K. Eaton, Judge
          v.                    :
                                : Court No. 08-00364
UNITED STATES,                  :
                                :
          Defendant,            :
          and                   :
                                :
ARCH CHEMICALS, INC. and HEBEI  :
JIHENG CHEMICAL CO., LTD.,      :
                                :
          Defendant-Intervenors.:
                                :
_____:


OPINION AND ORDER

[Defendant's motion to dismiss denied.]

Dated: August 9, 2010

    *Gibson, Dunn & Crutcher LLP* (*Daniel J. Plaine*, *J. Christopher Wood*, and *Andrea F. Farr*) for plaintiffs.

    *Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White*, *Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David D'Alessandris*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Brian Soiset*), for defendant.

    Eaton, Judge: This case is before the court on a motion to dismiss, pursuant to USCIT Rule 12(b)(1), of defendant the United States, acting on behalf of the United States Department of

Commerce ("Commerce").  Defendant's motion seeks the dismissal of Count 3 of plaintiffs' complaint in its entirety, and the dismissal of Counts 1 and 2 as they pertain to Hebei Jiheng Chemical Corporation ("Jiheng").  Def.'s Mot. to Dismiss in Part as Moot ("Def.'s Mot.") 1.  If Commerce's motion is granted, Jiheng will be dismissed from the case.

By their complaint, Clearon Corporation and Occidental Chemical Corporation (collectively, "plaintiffs" or "Clearon") contest certain aspects of Commerce's final results in the second administrative review of the antidumping duty order on chlorinated isocyanurates covering the period June 1, 2006 through May 31, 2007.  Compl. ¶ 3; *see also* Chlorinated Isocyanurates from the People's Republic of China, 73 Fed. Reg. 62,249 (Dep't of Commerce Oct. 20, 2008) (amended final results of antidumping duty administrative review)(the "Final Results").  Plaintiffs are domestic producers of chlorinated isocyanurates seeking to increase Jiheng's dumping margins found in the Final Results.  *See* Compl. ¶ 5.

The basis for defendant's motion is that the portions of the complaint involving Jiheng's merchandise have been rendered moot because the merchandise was liquidated by operation of law in accordance with 19 U.S.C. § 1504(d) (2006), commonly referred to as the deemed liquidation provision.  Def.'s Mot. 1.  According to defendant, plaintiffs' failure to serve their injunction on

named government officials at Commerce and United States Customs
and Border Protection ("Customs" or "CBP") rendered the
injunction order incapable of preventing a deemed liquidation.
Def.'s Mot. 3.  For the reasons set forth below, defendant's
motion to dismiss is denied.


                            BACKGROUND

     On June 24, 2005, following an investigation, Commerce
published an antidumping duty order on chlorinated isocyanurates.
Chlorinated Isocyanurates from the People's Republic of China, 70
Fed. Reg. 36,561 (Dep't of Commerce June 24, 2005) (notice of
antidumping duty order)(the "Order").  On July 26, 2007, at the
request of certain foreign producers, exporters, and domestic
producer Clearon, Commerce commenced the second periodic review
of the Order pursuant to 19 U.S.C. § 1675(a)(1) and 19 CFR
§ 351.213(b).  Initiation of Antidumping and Countervailing Duty
Administrative Reviews and Request for Revocation in Part, 72
Fed. Reg. 41,057 (Dep't of Commerce July 25, 2007).  On September
10, 2008, Commerce published the final results of the review,
later amended on October 20, 2008.  Chlorinated Isocyanurates
from the People's Republic of China, 73 Fed. Reg. 52,645 (Dep't
of Commerce Sept. 10, 2008); Final Results, 73 Fed. Reg. at
62,249.  Importantly, as a result of this publication, the
suspension of liquidation that had previously been in effect as a

result of the review was lifted. *See*, *e.g.*, *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (2002) ("*Int'l Trading*") (holding that "[t]he statutory scheme governing suspension of liquidation supports the . . . conclusion that suspension of liquidation [is] removed when the final results of the administrative review [are] published in the Federal Register").

Following publication of the Final Results, Clearon commenced this lawsuit to contest the results of the review. On November 12, 2008, Clearon, with defendant's consent, sought an injunction against liquidation, and on November 13, 2008, the court granted the injunction. Def.'s Mot. 2; *Clearon Corp. v. United States*, Court No. 08-00364, at 1-2 (Nov. 13, 2008) (injunction order) (the "Injunction"). Among other things, the Injunction provided that it would enjoin liquidation of plaintiffs' merchandise that remained:

> unliquidated as of 5:00 p.m. on the fifth business day after the day on which a copy of this preliminary injunction *is personally served by Plaintiffs' counsel by hand on the following individuals or their delegates*:
>
> Attn: Ann Sebastian, APO Director,
> U.S. Department of Commerce, Room 1870
> International Trade Administration, Import Administration,
> 14th Street and Constitution Avenue, N.W.,
> Washington, DC 20230; and
>
> Hon. W. Ralph Basham, Commissioner of Customs,
>   Attn: Alfonso Robles, Esq., Chief Counsel,
> U.S. Bureau of Customs and Border Protection, Room 4.4-B,
> 1300 Pennsylvania Avenue, N.W.,

Court No. 08-00364                                    Page 5

          Washington, DC 20229

Injunction at 1-2 (emphasis added).  While the Injunction was

served on defendant's counsel, it was never served on either of

the named officials.  Def.'s Mot. 3.

     The case then proceeded in the usual fashion until December

14, 2009 when defendant filed its motion to dismiss, claiming

that all of Jiheng's merchandise subject to the second

administrative review had been deemed liquidated pursuant to 19

U.S.C. § 1504(d), and as a result, the court had no jurisdiction

to hear unfair trade duty claims related to the Company's

merchandise.  Def.'s Mot. 4.


                        STANDARD OF REVIEW

     "The party seeking to invoke this Court's jurisdiction has

the burden of establishing such jurisdiction."  *Autoalliance

Int'l, Inc. v. United States*, 29 CIT 1082, 1088, 398 F. Supp. 2d

1326, 1332 (2005) (citations omitted).  A case becomes moot when

it has "lost its character as a present, live controversy of the

kind that must exist if we are to avoid advisory opinions on

abstract propositions of law."  *Hall v. Beals*, 396 U.S. 45, 48

(1969) (citations omitted).  This requirement of an actual

controversy exists at all stages of an action.  *Steffel v.

Thompson*, 415 U.S. 452, 461 n.10 (1974).

DISCUSSION

I.   Contentions of the Parties

     Defendant's primary argument is that because plaintiffs
failed to serve the Injunction on Ms. Sebastian at Commerce and
Mr. Basham at Customs, the document did not effect a suspension
of liquidation that would prevent a deemed liquidation.  Def.'s
Mot. 3.  Defendant further insists that, by operation of law,
deemed liquidation of Jiheng's merchandise occurred on April 20,
2009.  Def.'s Mot. 3.  According to defendant, this deemed
liquidation mooted Clearon's case as to Jiheng's merchandise,
thus denying the court subject-matter jurisdiction to hear the
substantive claims with respect to that merchandise.  Def.'s Mot.
4.  Thus, defendant argues that:

> The clear terms of the injunction state
> that the injunction will take effect "on the
> fifth business day after the day on which a
> copy of this preliminary injunction is
> personally served by Plaintiffs' counsel by
> hand" on Commerce. The injunction was not
> served, personally or otherwise, upon Commerce
> and CBP [Customs]. Thus, nothing enjoined the
> lifting of the suspension of liquidation
> during the nearly 14 months since publication
> of the *Amended Final Results* . . . .
>
> In this case, the removal of suspension
> of liquidation, as well as notice to CBP of
> that removal, occurred when the *Amended Final
> Results* were published in the Federal Register
> on October 20, 2008. Thus, the entries at
> issue in this case became liquidated by
> operation of law on April 20, 2009.

Def.'s Mot. 6-7 (citations omitted).

Clearon, on the other hand, insists that the motion should

be denied, primarily because:

> [T]he absence of any prejudice to Defendant or
> any other party from the alleged service
> defect places this case squarely within the
> ambit of the harmless error rule. . . . Under
> these circumstances, the Court should give
> effect to the clear intent and agreement of
> the parties and the order of this Court that
> the entries subject to the appeal would be
> enjoined and deny Defendant's motion to
> partially dismiss Plaintiffs' claims as moot.

Memo. of Clearon Corp. and Occidental Chem. Corp. in Opp. to

Def.'s Part. Mot. to Dismiss ("Pls.' Resp.") 2.


II.  Suspension of Liquidation and Injunction

Suspensions of liquidation and court-ordered injunctions are

important tools used in the statutory scheme providing for the

application of the proper duties under our unfair trade regime.[1]

---

[1]      The United States uses a "retrospective" assessment
system where the importer makes a cash deposit of the estimated
dumping duties when the subject merchandise enters the United
States, but the actual duty is not necessarily determined until
after entry, and is not paid until the entries are liquidated by
Customs. 19 C.F.R. § 351.212(a) (2009); 19 C.F.R. §§ 141.101,
103.  If no request for a review is made, Commerce instructs
Customs to liquidate the entries at the estimated antidumping
duties at the time of entry (the "entered rate").  19 C.F.R.
§ 351.212(c)(i).  If a timely request for review is made,
Commerce publishes the notice of initiation of the review in the
Federal Register and commences the review, during which time
liquidation is suspended.  19 C.F.R. § 351.212(c)(2); 19 C.F.R.
§ 351.221(b); see also American Permac, Inc. v. United States, 10
CIT 535, 539, 642 F. Supp. 1187, 1191 (1986) ("Because 19 U.S.C.
§ 1675(a)(2) expressly calls for the retrospective application of
antidumping review determinations . . . suspension of liquidation
during the pendency of a periodic antidumping review is

The suspension of liquidation is terminated, however, when final
results of an investigation are published in the Federal Register
so that Customs may liquidate the merchandise at the final rate.
*Int'l Trading*, 281 F.3d at 1272; *see also* 19 U.S.C. §
1673e(a)(providing that an antidumping duty order should set
forth the antidumping duty rate).  Often, however, a party will
request a periodic review to test the applicability of the rate
to entered merchandise.  *See* 19 U.S.C. § 1675(a)(2)(c) (providing
that the final results of an administrative review should set
forth the determination of antidumping duty rates that "shall be
the basis for the assessment of countervailing or antidumping
duties" on the subject entries).  Liquidation is suspended during
the review so the liquidation will take place in accordance with
a review's result.  *See* 19 U.S.C. § 1673b(d)(2).

When the results of a review are challenged in this Court, a
party will typically seek to further halt liquidation by
requesting an injunction.  19 U.S.C. § 1516a(c)(2) ("The United
States Court of International Trade may enjoin the liquidation of
some or all entries of merchandise covered by a determination of
the . . . administering authority . . . upon a request by an
interested party for such relief and a proper showing that the

---

unquestionably 'required by statute[].'").  Following the review,
Commerce publishes the final results of the review, and the
entries are liquidated in accordance with those final results,
unless there is an appeal to this Court.  19 C.F.R. § 351.221(b).

requested relief should be granted under the circumstances."). The purpose of the injunction is to prevent liquidation and to preserve merchandise for liquidation at the rate finally determined following judicial review.

Were an injunction not entered, Customs would be free to actually liquidate the merchandise pursuant to 19 U.S.C. § 1500(c)-(d), which provides that the "Customs Service shall . . . fix the final amount of duty to be paid on such merchandise . . . [and] liquidate the entry . . . of such merchandise . . . ."

III. Deemed Liquidation

If no injunction is entered and Customs does not act, however, another provision comes into play.  By statute, entries of merchandise not liquidated by Customs within six months of the removal of suspension of liquidation are deemed liquidated at the entered rate:

> Any entry (other than an entry with respect to which liquidation has been extended under subsection (b) [relating to an extension of the six month period by the Secretary of Commerce] of this section) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record . . . .

19 U.S.C. § 1504(d).

Thus, for a deemed liquidation to take place, three conditions must be met: "(1) the suspension of liquidation that

was in place must have been removed; (2) Customs must have
received notice of the removal of the suspension; and (3) Customs
must not liquidate the entry at issue within six months of
receiving such notice." *Fujitsu Gen. Am., Inc. v. United States*,
283 F.3d 1364, 1376 (Fed. Cir. 2002) ("*Fujitsu*").  Because they
take place by operation of law, Customs plays no role in
effectuating deemed liquidations.


IV.  Mootness

     The "mootness doctrine" results from the case or controversy
requirement found in Article III of the United States
Constitution.  *See* 13B Charles Alan Wright, Arthur R. Miller &
Edward H. Cooper, Federal Practice and Procedure § 3533 (3d ed.
2008).  In the context of an unfair trade case, courts have
generally found that once entries have been liquidated, there is
no case or controversy with respect to the duty rate to be
applied to them.  As a result, liquidation moots a court
challenge to the duty rate imposed in an administrative review.
"Once liquidation occurs, it permanently deprives a party of the
opportunity to contest Commerce's results for the administrative
review by rendering the party's cause of action moot."  *SKF USA
Inc. v. United States*, 28 CIT 170, 173, 316 F. Supp. 2d 1322,
1327 (2004) (citing *Zenith Radio Corp. v. United States*, 710 F.2d
806, 809-10 (Fed. Cir. 1983) ("*Zenith*")); *see also Fujitsu*, 283

F.3d at 1376.  This applies to entries deemed liquidated by

operation of 19 U.S.C. § 1504(d).  *Ames True Temper v. United*

*States*, 34 CIT __, __, __ F. Supp. 2d __, __, Slip Op. 10-33 at 6

(Mar. 30, 2010) (citation omitted).


V.   Special Provision of CIT Injunctions

     Consent injunctions in the Court of International Trade

generally contain two special provisions not normally found in

other injunction orders.  In ordinary practice, it is the duty of

the lawyer for the party being enjoined to inform those who might

violate the injunction of its existence, e.g., officers of a

corporation.  *See, e.g.*, USCIT Rule 65(d)(2) (stating that an

injunction binds various categories of individuals working for or

with the parties "who receive actual notice of it by personal

service or otherwise"); *Anthony Marano Co. v. MS-Grand*

*Bridgeview, Inc.*, No. 08 C 4244, 2009 WL 1904403, at *3 (N.D.

Ill. July 1, 2009) (providing that the enjoined party, whose

employees violated a preliminary injunction, cannot claim that

the "notice of the injunction 'was not fully transmitted' to all

of [its employees]" when its counsel has been notified of the

injunction).

     Starting sometime after *Zenith*,[2] however, it became common

---

     [2]   This case, which is generally the initial point of
reference for cases dealing with injunctions in the context of
unfair trade laws, held that liquidation of entries of

in this Court for a consent injunction to contain language
requiring the party that obtained the injunction to serve it on
officers of the United States government.  The agreed upon reason
for this service was to give actual notice sufficient to prevent
Commerce and Customs from taking any inadvertent action to
actually liquidate the subject merchandise while the injunction
was in force.  Pls.' Resp. 5.  At oral argument, defendant's
counsel explained that because these agencies are large, the
correct person must be served to ensure proper compliance with an
injunction.  Tr. of Civ. Cause for Or. Arg. at 6:1-7.

The other special provision often found in consent
injunctions in this Court is the five-day grace period.  In
accordance with this provision, a consent injunction does not
become effective until "the fifth business day after the day on
which a copy of [the] preliminary injunction is personally served
by Plaintiffs' counsel by hand" on the specified individuals at
Commerce and Customs.  *See, e.g.*, Injunction at 1.  This
provision has recently been the subject of litigation.  *See Agro*

merchandise subject to administrative review renders court
challenges moot, and therefore, a domestic manufacturer
challenging the result of the review would suffer irreparable
harm if liquidation were not enjoined.  *Zenith*, 710 F.2d at 810.
Hence, the court established a "per se right to a preliminary
injunction enjoining liquidation of unliquidated entries pending
final judicial review of administrative review determinations."
*NMB Sing. Ltd. v. United States*, 24 CIT 1239, 1242 n.4, 120 F.
Supp. 2d 1135, 1138 n.4 (2000) (citing *Zenith*).

*Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1189 (Fed.

Cir. 2009) ("*Agro Dutch*").


VI.   *Agro Dutch*

In *Agro Dutch*, this Court granted a consent injunction that

included the five-day grace period.  Thus, in accordance with its

terms, the injunction would not take effect until five days after

it was served on the specified individuals at Commerce and

Customs.  589 F.3d at 1189.  The Federal Circuit noted that the

purpose of the grace period was "to ensure against subjecting

Customs officials to contempt sanctions for an inadvertent

liquidation."  *Id*. at 1193.  The *Agro Dutch* injunction was served

on the named officials.  *Id*. at 1189.  Customs, however,

liquidated the entries during the five-day grace period.  *Id*.

Because Commerce acted to liquidate during the grace period,

nothing in the terms of the injunction prevented the liquidation

from taking place.  Nonetheless, both this Court and the Federal

Circuit found that the "original understanding and intent of the

court and the parties" that the entries be preserved for

liquidation at the final rate overrode the lesser intention that

there should be a safe harbor period.  *Id*. at 1192, 1194.  The

Federal Circuit emphasized the importance of "effecting the

intent of the parties and the court to prevent a premature

liquidation while judicial review is ongoing."  *Id*. at 1193-94.

In reaching its decision, the *Agro Dutch* court stressed the equitable power of a Court of International Trade judge and the importance of complying with the parties' original intent:

> The trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties.
>
>         . . . [I]t was the purpose of the injunction and the understanding and intent of all the parties to suspend liquidation pending a decision on the merits of [plaintiff's] challenge. . . .
>
>         . . . .
>
>         While finality is an important goal, the interest in finality must give way in the face of a more compelling interest in this case: namely, effecting the intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing. . . . No valid interest in finality is served by foreclosing judicial review in a case such as this one, where the parties and trial court agreed that finality was not warranted, and where an injunction was entered for the very purpose of preventing the antidumping duty from becoming final.

*Id.* at 1192-94.

## VII. The Injunction Was In Effect at the Time of Deemed Liquidation

Here, the Injunction was entered by this Court on November 13, 2008, and Customs claims that deemed liquidation took place on April 20, 2009.  Def.'s Mot. 2-3.  As in *Agro Dutch*, the

parties agreed to a special term in the Injunction, i.e., the
requirement that Clearon serve Commerce and Customs.  As noted,
the purpose of this service was to reduce the chance of these
entities' taking action to liquidate the subject merchandise.  It
is important to keep in mind, however, that the notice resulting
from service on the named officials was designed to prevent
either Commerce or Customs from taking any action that would
result in an actual liquidation.  No party claims, nor could it,
that this service would put either agency on notice with respect
to any action it might take to effectuate a deemed liquidation.
This is because, as has been seen, a deemed liquidation is the
result of the operation of law upon the satisfaction of several
conditions.  *Fujitsu*, 283 F.3d at 1376.  Under the circumstances
of the case, neither Commerce nor Customs was empowered to act in
any way in furtherance of a deemed liquidation.  An examination
of the preconditions for a deemed liquidation will serve to
illustrate why this is the case.

     The first condition is that the "suspension required by
statute or court order is removed."  19 U.S.C. § 1504(d).  As
noted, this lifting of the suspension of liquidation took place
when Commerce published the Final Results.  *See Int'l Trading*,
281 F.3d at 1272.  In other words, the only action that Commerce
is authorized to take leading up to a deemed liquidation took
place here, and always takes place, prior to a party's seeking an

injunction against liquidation in this Court.  Thus, the service
of the Injunction on Commerce, as provided for in the document,
had no meaning under these circumstances, because Commerce was
powerless to take further action that would result in a deemed
liquidation.  Likewise, Customs could take no act nor make any
finding to further a deemed liquidation because it had no power
to do so.  Thus, with respect to a deemed liquidation, the
service requirement at issue here merely demands a meaningless
act.

        With this in mind, the court finds that the holding in *Agro
Dutch* directs the outcome of this case.  Indeed, as compelling as
the case was in *Agro Dutch* for reforming the injunction order to
eliminate the five-day grace period, here, the case for
dispensing with the service requirement is even more compelling.
In *Agro Dutch,* the five-day provision was designed to address
precisely the set of facts that actually came to pass—that is,
the liquidation of merchandise during the grace period.  589 F.3d
at 1189.  As has been noted, the provision at issue in *Agro Dutch*
specifically placed no bar on actual liquidation during the five-
day period.  *Id.*  In other words, the parties agreed, and the
court ordered, that a liquidation during this period would remain
undisturbed.  Nonetheless, the Federal Circuit found that it was
the primary "intent of the parties and the court to prevent a
premature liquidation while judicial review is ongoing" and

therefore, authorized the court to use its equitable powers to eliminate the grace period provision.  *Id.* at 1193-94.

    Here, the service provisions were designed to provide notice sufficient to stop the served agencies from inadvertently taking steps to liquidate the entries of subject merchandise while the injunction was in effect.  Pls.' Resp. 5.  It is important to keep in mind, however, that an actual liquidation, not a deemed liquidation, was the object of the provision.  As has been seen, in this case, neither served official could take lawful action to effectuate a deemed liquidation.  Thus, the service provision served no purpose with respect to preventing a deemed liquidation.

    Thus, as in *Agro Dutch*, the primary intention of the parties was to stop, during the pendency of the lawsuit, a liquidation, deemed or otherwise.  As such, the court is required to give meaning to the parties' primary intention that no liquidation should take place, and use its equitable powers to eliminate the notice provision.  *See Agro Dutch*, 589 F.3d at 1192 (providing that "[t]he trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties").

CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss.  Further, the court amends the Injunction to eliminate the service requirement and thus, finds that the Injunction served to suspend the liquidation of Jiheng's merchandise by action of law pursuant to 19 U.S.C. § 1516a(c)(2). As a result, Counts 1 and 2 of Clearon's complaint as they pertain to Jiheng's merchandise and Count 3 in its entirety are not moot.


                                    /s/ Richard K. Eaton

                                    Richard K. Eaton

Dated:  August 9, 2010
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk